UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

No. 1:13-CV-00529-CCE

| | |
|---|---|
| CHRISTOPHER D. ELLERBE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **DEFENDANTS' TRIAL BRIEF** |
| v. ) | |
| ) | |
| SORRELL SAUNDERS, et. al., ) | |
| ) | |
| Defendants. ) | |

Pursuant to the provisions of MDNC Local Rule 40.1(c) and the Pre-Trial and Scheduling Orders entered in this case, Defendants hereby provide the following Trial Brief, outlining the procedural, factual, and legal issues in this case in preparation for trial.

## STATEMENT OF PROCEDURE

Plaintiff filed his initial Complaint 27 June 2013 (D.E.1) and an Amended Complaint 13 December 2013 (D.E. 15). Defendants answered these allegations on 15 March 2014 and a scheduling order was entered 7 April 2014. Attorney for Defendants requested an extension of time to file summary judgment, which was not granted, and the matter was set for trial. (D.E.50 and 52, respectively). Thereafter, undersigned attorney substituted in her representation for Defendants and began preparation for trial. (D.E. 53). Plaintiff has sued Defendants in their official and individual capacity and has requested injunctive and declaratory relief only.

1

## STATEMENT OF FACTS

Ellerbe alleges two basic constitutional violations: (1) he was denied access to the court by defendants and (2) Defendant Ingram maintained his cuffs "too tight" on 29 January 2014. *See* D.E.s 1 and 15. As to the denial of access to the court, Ellerbe alleges that all nine defendants prevented him from access his legal property. *See* D.E. 1, p. 4. He essentially alleges that he was wholly refused his legal property on several occasions despite several requests. *Id.* Ellerbe alleges that this caused him to miss a deadline for the "U.S. Court of Appeals." *Id.* at p. 5. Ellerbe admits, however, that he was allowed to sort through his legal property on one occasion with his cuffs "behind his back" for "approximately four hours." *Id.* at p. 6. Ellerbe further admits he was given the opportunity to go to the "max-con" conference room to retrieve his legal property, but was "denied" his property once he was in the conference room. *Id.* at p. 12. Plaintiff alleges this caused him to "miss" a deadline with the U.S. Court of Appeals on 19 March 2013. *Id.* at p. 11. As to Defendants Thomas, Williams and Mewborn, it appears Plaintiff's only complaint is based in their response to grievances. (D.E. 1, p. 10, 13, and 16).

The evidence in this case will show that Plaintiff's underlying action, to which he alleges he was denied legal access, was a fully litigated claim through summary judgment and appeal. The evidence will show that the underlying case resulted from Ellerbe's masturbation during the day in full view of female correctional officers, to which he fully admits. Ellerbe proceeded to refuse a direct order to submit to cuffs, which resulted in a cell extraction. Judge Conrad in the Western District of North Carolina granted summary

judgment in favor of Defendants and the 4th Circuit upheld that decision on the merits of the summary judgment argument and record before the District Court. Plaintiff filed **multiple** documents in the case, including a response to defendants' summary judgment motion. *See* Case 3:10-cv-00130-RJC.

Not only will the evidence show that Ellerbe was not, in fact, prevented from adequately litigating the underlying action, the evidence will also show that Defendants did not actually prevent Plaintiff from accessing his legal property. The evidence in this case will show that Plaintiff was placed in segregated housing following a disciplinary incident. Plaintiff then **refused** to return to general population, which, as a violation of a direct order, earned him a place back in segregated housing for a longer period.

Upon Plaintiff's original transfer from general population to segregated housing, he was informed that he could not have eight or nine bags of property in his cell. The evidence will show that Ellerbe was allowed to keep three bags in his cell per prison policy, and had to store the other bags in the unit's storage room. He was then informed that he could make an appointment to go through his property in the segregated unit's conference room and he could also "switch out" between what was being stored in his cell and what was being stored in the unit's storage room. The evidence will also show that Ellerbe was removed from his cell and allowed to go through his property in the conference room no less than four times, sometimes for several hours, between December 2012 and May 2013. Ellerbe was uncooperative or combative each time. The evidence will further show that restrictions on property in segregated units is based upon the safety and security needs of the facility in managing inmates classified in segregated units based

3

on their behavior, such as Ellerbe.

As to Plaintiff's claim that his handcuffs were "too tight" the evidence in the case will show that there was no evidence of any injury to Ellerbe's wrists on that day, 29 January 2013. The evidence will further show that Ellerbe, as an inmate in a high security unit based on his own actions, was required by policy to be cuffed in a specific manner when outside of his cell. Again, such policy allows safe management of a population of inmates, like Ellerbe, that are a greater security risk for the facility. However, the evidence will also show that Ellerbe was allowed access to his legal property while cuffed in front, not in the back. The evidence will also show Ellerbe could have switched out his property three bags at a time to go through his legal property at his leisure, uncuffed, in his cell but simply refused that option.

## ARGUMENT

I. **Plaintiff's right to access to courts has not been violated.**

In *Bounds v. Smith*, 430 U.S. 817, 824-5 (1977) the Supreme Court laid out the requirement that states provide meaningful access to the courts:

> Our decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to courts. It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. States must forego collection of docket fees otherwise payable to the treasury and expend funds for transcripts…This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial.

4

However, the Supreme Court subsequently limited the reach of *Bounds*, ruling that to the extent *Bounds* "suggested that the state must enable the prisoner to discover grievances, and to litigate effectively once in court…these elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases, and we now disclaim them." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). This constitutional right of meaningful access to the courts was not meant to extend "further than protecting the ability of an inmate to prepare a petition or complaint." *Wrenn v. Freeman*, 894 F. Supp. 244, 248 (E.D.N.C. 1995).

Likewise, the Fourth Circuit noted that *Lewis* ensured only that the State provide those tools that "the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Giarratano v. Johnson*, 456 F. Supp. 747, 752 (W.D. Va. 2006), *aff'd,* 2008 U.S. App. LEXIS 6144 (4th Cir. 2008)(quoting *Lewis, supra* at 355). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

In North Carolina, pursuant to statute, the Office of Indigent Defense Services is responsible for "establishing, supervising, and maintaining" a system for providing legal representation and "related services" in "cases in which the State is legally obligated to provide legal assistance and access to the courts to inmates in the custody of the Division of Adult Correction of the Department of Public Safety." *N.C. Gen. Stat.§ 7A-498.3(a)(2a)(2014).* Furthermore, Indigent Defense Services is administered by the Director of Indigent Defense Services and is created within the Judicial Department, not the Department of Public Safety. *N.C. Gen. Stat. § 7A-498.2 (2014).*

5

Case 1:13-cv-00529-TDS-LPA   Document 60   Filed 06/08/15   Page 5 of 18

Indigent Defense Services has contracted with North Carolina Prisoner Legal Services to provide services to prisoners, and it has been found that this plan "offers North Carolina inmates that constitutionally mandated level of assistance necessary to protect their right of meaningful access to the courts. *See Tolbert v. Wyatt*, 2010 U.S. Dist. LEXIS 10129, *10-11 (attached hereto as Exhibit A) (external citation omitted). The court in *Tolbert* pointed to the very fact that the inmate was able to prepare a complaint to show that his access to courts had not been compromised. *Id.*

To the extent Plaintiff makes claims against Defendants Thomas, Williams, and Mewborn, these are only based in their participation in the grievance procedure. (D.E. 1, p. 10, 13, and 16). The grievance procedure does not confer a substantive right upon inmates. *See Adams v. Rice*, 40 F.3d 72,75 (4th Cir. 1994); *also see Cameron v. Bonney*, 523 Fed. Appx. 969 (4th Cir. 2013). In *Taylor v. Lang*, 483 Fed. Appx. 855, 858 (4th Cir. 2012), plaintiff-inmate alleged that defendant violated his due process rights through "unsatisfactory investigation and consideration of his various administrative grievances." The Fourth Circuit found that argument to be "without merit" holding that the inmate's "access to and participation in the prison's grievance process are not constitutionally protected" and the defendant's alleged "malfeasance" of failure to investigate or consider the grievances did not amount to a violation of plaintiff's "access to courts." *Id.* Plaintiff cannot make any presentation of evidence to support any claim against Defendants Thomas, Williams, and Mewborn in this case.

### II. Plaintiff has not suffered a constitutional violation because his handcuffs were "too tight."

"It is not clear whether a claim by an inmate who asserts use of excessively tight restraints should be evaluated as one for the use of excessive force or as one challenging the conditions of confinement." *Depaola v. Ray*, 2013 U.S. Dist. LEXIS 117182, *75-6 (W.D.Va. 2013), *attached hereto as Exhibit B*. The trend in the Fourth Circuit has been to analyze the issue under both the excessive force **and** the conditions of confinement analysis. *Id.*

### *Excessive Force*

Once an inmate is incarcerated, it is only the "unnecessary and wanton infliction of pain" that "constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (U.S. 1986). To establish an Eighth Amendment claim, an inmate must satisfy both an **objective component**--that the harm inflicted was sufficiently serious--and a **subjective component**--that the prison official acted with a sufficiently culpable state of mind. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). What an inmate must establish respecting each component "varies according to the nature of the alleged constitutional violation." *Id.*

In *Whitley,* the Court analyzed what was required to be proven in excessive force cases when an inmate was shot by a guard during an attempt to quell a prison riot and contended he suffered cruel and unusual punishment. The *Whitley* court provided:

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited

7

> by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

*Id.* at 319 (emphasis added; citations omitted; internal quotation marks omitted).

The "core judicial inquiry," is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 319-320. "When prison officials maliciously and sadistically use force to cause harm…contemporary standards of decency always are violated…whether or not significant injury is evident." *Wilkins v. Gaddy*, 559 U.S. 34, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson v. McMillian*, 503 U.S. 1 at 9.

"This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry. *Id.* at 7. "Not every malevolent touch by a prison guard, later determined in the calm of a judge's chambers to be gratuitous, gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 9 (quoting *Johnson* v. *Glick*, 481 F.2d 1028, 1033 (2nd Cir. N.Y. 1973)).

As noted in *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. Ill. 1985), cert. denied, 479 U.S. 816, 93 L. Ed. 2d 28, 107 S. Ct. 71 (1986): "The infliction of punishment is a deliberate act intended to chastise or deter. This is what the word means today; it is what it meant in the eighteenth century . . . . If [a] guard accidentally stepped on [a] prisoner's toe and broke it, this would not be punishment in anything remotely like

8

the accepted meaning of the word, whether we consult the usage of 1791, or 1868, or 1985." *See also Johnson, supra* at 1032 (Friendly, J.), ("The thread common to all [Eighth Amendment prison cases] is that 'punishment' has been deliberately administered for a penal or disciplinary purpose").

It is a heavy burden for Plaintiff to show the subjective prong required to prove cruel and unusual punishment. *See Boone v. Stallings*, 583 Fed. Appx. 174, 176 (4th Cir. Md. 2014). Under the subjective prong, the plaintiff is required to prove that a "prison official acted with a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The *Whitley* Court mandated "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Whitley* at 319-20. In proving this element, the prisoner must show that the defendant inflicted unnecessary and wanton pain and suffering. *Id.* at 319. In determining whether prison officials have acted maliciously and sadistically, a court should balance: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used," (3) the threat reasonably perceived by the responsible officials, and (4) "any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312 at 321 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

It is from considerations of the factors outlined in *Whitley, supra* that "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 320-321 (U.S. 1986). *Also see Duckworth, supra* (equating "deliberate

9

indifference," in an Eighth Amendment case involving security risks, with "recklessness in criminal law," which "implies an act so dangerous that the defendant's knowledge of the risk can be inferred"). "But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id.*

Ultimately, the question of whether the measure taken inflicted unnecessary and wanton pain turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Johnson, supra.*

In *DePaolo, supra*, the court found that the officer's requirement that he follow policy, which indicated he could not loosen the restraints, coupled with no physical manifestations of bruising or swelling from the alleged "tight handcuffs" failed to sufficiently show excessive force. *Id.* at *79-81.

### *Conditions of Confinement*

To succeed on a condition of confinement claim, an inmate must first demonstrate an objectively serious constitutional injury. *Id.* at *82 (external citations omitted). "The Fourth Circuit has indicated that this is an extremely tough standard for the inmate to meet." *Id.* There are two prongs, objective and subjective. *Id.* "Under the objective prong…an inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society." *Id.* (external citations omitted). The

10

"resulting harm" is "especially pertinent in determining whether a distasteful condition was sufficiently extreme to constitute an unconstitutional infliction of punishment." *Id.* (external citations omitted). If the inmate has not suffered a serious or significant physical or mental injury as a result of the challenged condition, he has not been subjected to cruel and unusual punishment within the meaning of the Eighth Amendment. *Id.* (external citations omitted). In *DePaola*, the lack of any evidence to show a physical manifestation of any injury resulted in summary judgment in favor of defendants. *Id.* As with *DePaulo, supra*, Ellerbe will not be successful at trial in showing any constitutional violation by Defendant Ingram.

### III. Plaintiff will not be able to show that the North Carolina Department of Public Safety is the "driving force" behind his alleged injury, and therefore his official capacity claims fail.

A government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs.* 436 U.S. 658, 694 (1978). A claim against an individual in their official capacity is proper when "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Id.*

"While personal capacity suits impose personal liability on a government official for actions he takes under color of state law, official capacity suits represent, essentially, another way to plead an action against the government entity for which the officer is an agent." *Id.* at 690. An official-capacity suit is to be treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

11

In an individual capacity suit, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Id.* However, in an official-capacity action, Plaintiff must prove more, because a government entity is liable under §1983 only when the "**entity itself is a moving force behind the deprivation**." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). In order to establish liability of the government entity, a plaintiff "must demonstrate that **(1) a government actor deprived the plaintiff of [his or] her federal rights, and (2) the harm was the result of an official policy or custom of the local entity**." *See Brown v. Winders*, 2011 U.S. Dist. Lexis 116928 (E.D.N.C. 2011), attached hereto as Exhibit C. Therefore, in an official-capacity suit, the entity's policy or custom must have played a part in the violation of federal law. *Graham, supra, (quoting Monell, supra* at 694).

The Supreme Court has determined that in deciding whether an official capacity claim against a state official is allowable, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon M.d, Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002)(internal quotations omitted). Actions seeking declaratory relief are permissible when they seek prospective relief against an alleged ongoing violation of federal law but not when it simply seeks to expose the State to liability for retrospective monetary damages. *Id.* Presently, Ellerbe is no longer housed at Scotland and his underlying action is well over, thus he suffers no ongoing violation. An inmate's transfer out of the facility moots his claim for injunctive relief. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. Md. 2009).

12

Case 1:13-cv-00529-TDS-LPA   Document 60   Filed 06/08/15   Page 12 of 18

**IV. These Defendants cannot provide Plaintiff with the injunctive or declaratory relief he seeks and thus, his request for injunctive or declaratory relief against Defendants in their official capacity will fail.**

Even if Plaintiff has proven that he is suffering an ongoing constitutional violation, he must select the correct individuals to provide him injunctive or declaratory relief. In order to determine whether an individual is the appropriate defendant for an official capacity action against the state to enjoin the enforcement of an act alleged to be unconstitutional, "it is plain that the **officer must have some connection with the enforcement of the act**." *Thigpen v. Cooper*, 739 S.E.2d 165, 170-171 (N.C. Ct. App. 2013). The "important and material" fact is whether the state officer, by virtue of his office, has some connection with the enforcement of the act. *Id.* Thus, essentially, "a state officer may be sued in his official capacity under § 1983 if…a plaintiff seeks only declaratory or injunctive relief and attorney fees and does not seek any damages." *Lucchesi v. State*, 807 P.2d 1185, 1194 (Colo. Ct. App. 1990) quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (U.S. 1989).

The declaratory or injunctive relief Plaintiff seeks in this case is that these Defendants "return" his legal property. However, Ellerbe will not be able to show that these individuals, many of whom are now attempting to enjoy their retirement or who no longer work for the Department of Public Safety, have any connection with the act he seeks to enforce.

## V. Sovereign immunity bars any claim for money damages against Defendants in their official capacity.

Defendants contend that Plaintiff has wholly failed to request any monetary damages at all in this case and discussion of sovereign and/or qualified immunity in no way implies trial by consent of any request for monetary damages. However, in an abundance of caution, to the extent Plaintiff seeks to recover money damages from these Defendants in their official capacity, and this Court finds that Plaintiff has, in fact, properly stated an official capacity claim, the immunity provided by the Eleventh Amendment to the United States Constitution and sovereign immunity bar the recovery of such damages. The Supreme Court of the United States has held that "neither a State nor its officials acting in their official capacities are persons under §1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-64, 105 L. Ed. 2d 45, 53 (1989). The *Will* Court further stated

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.

*Id*. Thus, the Court concluded that "in enacting §1983, Congress did not intend to override well-established immunities or defenses under common law," and that "the doctrine of sovereign immunity" was a familiar common law defense. *Id*. at 67. Because the Eleventh Amendment prohibits actions in federal court by individuals against a state unless the state has consented to suit, the protections of the Eleventh Amendment extend "to States or governmental entities that are considered arms of the State for Eleventh Amendment purposes." *Will*, 491 U.S. at 70.

14

Accordingly, in the instant case, a suit against Defendants in their official capacities is a suit against the State and barred by the Eleventh Amendment. *See e.g. Floyd v. N.C. Dep't of Corr.*, 2011 U.S. Dist. LEXIS 45007 (W.D.N.C.)(attached hereto as Exhibit D); *Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535, 541 (E.D. Va. 2007) (holding "It is a matter of black letter law that a private individual cannot maintain a §1983 suit against a state or a state agency in federal court on the basis of Eleventh Amendment immunity."). It is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity. *Graham*, 473 U.S. at 167 (1985). In addition, punitive damages are not available under § 1983 from a municipality. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." A state's Eleventh Amendment Immunity will not be negated "absent (1) a valid abrogation of that immunity by Congress, (2) a State's clear and unequivocal waiver of immunity, or (3) the prosecution of an action that fits comfortably within the doctrine of Ex parte Young . . . ." *Bell Atlantic MD, Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279, 288 (4th Cir. 2001). Plaintiff's failure to provide how immunity does not apply in this case fails to establish a claim against Defendants in their official capacity for monetary claims. *See Mayfield v. Merced*, 2014 U.S. Dist. LEXIS 158648, (attached hereto as Exhibit E) (specifically rejecting pursuant to *Twombly* the previous holding in *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163,

15

168 (1993) that plaintiff was not required to set out specific facts concerning how immunity was overcome).

The Fourth Circuit has not yet ruled on whether dismissing a suit on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subjected matter jurisdiction under Rule 12(b)(1). *See Andrews v. Daw*, 201 F. 3d 521, 524 n.2 (4th Cir. 2000). Likewise, pursuant to Rule 12(b)(2), the court does not have jurisdiction over official capacity claims to the extent they request monetary damages. *See Will, supra* (determining that neither the State nor officials acting in their official capacities are "persons" for purposes of § 1983). Thus, to the extent Plaintiff is requesting any monetary damages, he is precluded from those damages against Defendants in their official capacities.

## VI. Defendants are protected in their individual capacity by the doctrine of qualified immunity.

Defendants contend that Plaintiff has wholly failed to request any monetary damages at all in this case and discussion of sovereign and/or qualified immunity in no way implies trial by consent of any request for monetary damages. However, in an abundance of caution, Defendants further assert the defense of qualified immunity. A government official is entitled to qualified immunity from civil damages as long as his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

Importantly, the test is not if in hindsight the action was wrongful but whether it was

16

"clearly forbidden." *See Bailey v. Kennedy,* 349 F. 3d 731, 739 (4th Cir. 2003). It must be clear to the "reasonable officer" that his conduct was lawful in the situation he was in. *See Saucier v. Katz*, 533 U.S. 194, 202, (2001) and *Pearson v. Callahan*, 555 U.S. 223 (2009). Defendants contend Ellerbe has wholly failed in this case to request any monetary damages. However, to the extent he did, qualified immunity shields Defendants in their individual capacity from liability for Plaintiff's claims against them for monetary damages as these Defendants, individually.

Plaintiff Ellerbe's claim in this case amounts to nothing more than a prisoner's demand that he be allowed to follow his own set of rules. Ellerbe comes before this Court, bringing with him nine (9) Defendants, jurors, and court personnel because he wanted to have eight property bags in his cell all at one time instead of having to check them out three at the time.

This the 8th day of June 2015.

                                        ROY COOPER
                                        Attorney General

                                        /s/Donna E. Tanner
                                        Donna E. Tanner
                                        Assistant Attorney General
                                        N.C. State Bar No. 38547
                                        N.C. Department of Justice
                                        P.O. Box 629
                                        Raleigh, North Carolina 27602-0629
                                        Telephone:  (919) 716-6500
                                        Fax:          (919) 716-6761
                                        E-Mail:     dtanner@ncdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the **Defendants' Trial Brief** with the Clerk of the Court using the CM/ECF system, and I mailed a copy of the attached document by first class mail, postage pre-paid, to the following non-CM/ECF participant:

>Christopher D. Ellerbe
>OPUS No. 1068847
>Maury Correctional Institution
>P.O. Box 506
>Maury, NC 28554

This the 8th day of June 2015.

>/s/Donna E. Tanner
>Donna E. Tanner
>Assistant Attorney General