IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTOPHER D. ELLERBE,        )
                               )
         Plaintiff,            )
                               )
    v.                         )         1:13CV529
                               )
SORRELL SAUNDERS, et al.       )
                               )
         Defendants.           )

**MEMORANDUM ORDER**

This case is before the court on several motions arising from a settlement conference conducted on June 30, 2015, on the eve of the case's trial setting. For the reasons noted herein, the court will enforce the settlement agreed to by the parties in open court.

**I.  BACKGROUND**

Plaintiff is a detainee of the State of North Carolina Department of Corrections. He originally brought this action *pro se*, seeking declaratory and injunctive relief against a host of Defendants who allegedly interfered with and/or limited his access to legal materials in connection with his attempt to seek *en banc* review by the United States Court of Appeals for the Fourth Circuit in a lawsuit he had filed related to his imprisonment.[1]

In due course, the case was placed on the court's July 2015

---

[1] The State reports that Ellerbe's prior lawsuit involved his unsuccessful claim for alleged excessive force when he was disciplined for refusing to stop "masturbating in daylight in front of a female correctional officer." (Doc. 75 at 11.)

civil trial term. To assist Ellerbe, the court appointed volunteer counsel, D. Alan Ruley, Esquire, and Bradley C. Friesen, Esquire, to represent Ellerbe, pursuant to the court's pro bono representation pilot program. (M.D.N.C. Standing Order No. 6.)

On June 30, 2015, the court called the case for a pre-trial status and settlement conference. Ellerbe and his counsel attended, as did Defendants through their counsel and client representatives. The parties indicated an interest in exploring whether they could resolve their dispute and, because the case potentially involved a non-jury trial, the court invited the lawyers to confer out of the court's presence to do so.

Following approximately four hours of negotiation, the parties reported that they had reached a settlement. (Doc. 75 at 14.) Ellerbe, through counsel, preferred to recite the terms, which had been reduced to writing, into the record:

> MR. RULEY: So the agreement is as follows:
>
> Paragraph 1, Mr. Ellerbe shall be allowed to have all of his legal materials in a secure area with a table for a total time of four hours for an initial review which may be divided in blocks of no less than two hours. If his classification at the time of this review requires the use of restraints, during this initial four-hour review, he shall be placed in no more than handcuffs in front without a black box. He shall be allowed to label each bag with his name, a number, and, quote, legal material, unquote. A pen or a marker shall be provided for labeling during this initial review only. This shall occur on or before August 1, 2015.

2

> Paragraph 2, Mr. Ellerbe shall be permitted to have in his cell up to the maximum number of bags allowed pursuant to DPS and/or institutional SOP.
>
> Paragraph 3, Mr. Ellerbe may request to exchange some or all of the bags of legal material in his cell with his other stored legal material. These requests shall be honored as efficiently as possible and without unreasonable delay and in accordance with DPS policy.
>
> Those are the terms of the agreement, Your Honor. We would anticipate typing those up and having them signed and then filing a dismissal with prejudice of the lawsuit.

(Id. at 15.)

The court then asked Ellerbe whether he personally agreed with those terms of the settlement of his case:

> THE COURT: All right. Let me ask -- Mr. Ellerbe, if you would stand for a moment please, sir. Are you in agreement with those terms?
>
> MR. ELLERBE: Yes, I am.
>
> THE COURT: Do you understand that if those terms are agreed to and assuming the Defendant agrees to them, then that your lawsuit is going to be dismissed?
>
> MR. ELLERBE: Yes, I do.
>
> THE COURT: And do you accept that?
>
> MR. ELLERBE: Yes, I do.

(Id. at 15-16.) The Defendants then noted that the verbatim recitation by Ellerbe's counsel accurately reflected their agreement. (Id. at 16.) The court further inquired:

> THE COURT: Now, is this going to be in the form of a stipulation or just an agreement between the parties? What legal form is it?

3

> MS. TANNER: Agreement between the parties.
>
> MR. RULEY: Agreement between the parties, and then a stipulation of dismissal.

(Id.)

Finally, the court inquired about the payment of costs and whether there were any other terms to the settlement:

> THE COURT: Okay. Have you all made arrangement for costs, et cetera?
>
> MR. RULEY: Each party would bear their own costs, Your Honor.
>
> MS. TANNER: Right, Your Honor.
>
> THE COURT: All right. Mr. Ellerbe, you are in agreement with that?
>
> MR. ELLERBE: Yes, I am, Your Honor.
>
> THE COURT: Okay. All right. Any other term to the agreement?
>
> MR. RULEY: No, sir.
>
> THE COURT: Any other term that you thought was part of the agreement, Mr. Ellerbe?
>
> MR. ELLERBE: No, sir.

(Id. at 16-17.) The parties agreed to have the agreement memorialized in a written document to be signed by Ellerbe and Defendants and a dismissal filed by July 13, 2015. (Id. at 17-19.) Consequently, the court stayed all pretrial deadlines pending the filing of the dismissal.

On July 13, although represented by counsel, Ellerbe filed a *pro se* motion to reconsider the settlement. (Doc. 72.) Ellerbe

4

argued that since the settlement conference with the court, he had "pondered the matter more so and has a change of thought and no longer is he in agreement with opposing parties initialed [sic] offer" because he was "pressured into being persuaded," "[w]hich is an injustice by no fault of his Counsels on Record." (Id. at 1-2.) He provides no other description of any claimed "pressure," but contends he had a "change of thought" and that his open court agreement amounted to no more than a "naked 'promise.'" (Id. at 2.) Ellerbe invites the court to "revisit" the merits of the parties' settlement memorandum. (Id. at 3.) He concludes that he desires to modify the agreement to receive $400 compensation. (Id. at 4.)

On July 15, Ellerbe filed a supplemental motion, now with a "new proposal" which sought to modify some of the substantive terms of the settlement agreed to in open court. (Doc. 73.) That same day, the court entered an order directing the parties within fourteen days to determine whether they could resolve the matter and, if not, for Defendants to determine whether they would seek to move to enforce the settlement and, if so, whether an evidentiary hearing would be required. (Doc. 74.) The court noted that in the absence of a resolution or the filing of any motion, the court intended to set out a schedule for reopening the time for the filing of dispositive motions. (Id.)

On July 28, counsel for Defendants filed a notice of an intent

5

to file a motion to enforce the settlement and stated their belief that no evidentiary hearing was necessary. (Doc. 76.) That same day, pro bono counsel moved for leave to withdraw as counsel for Ellerbe. (Doc. 77.)

Also on July 28, Ellerbe filed yet another motion to modify his settlement agreement. (Doc. 78.) In this motion, Ellerbe argues, without any factual basis, that the settlement negotiations "are/were based upon bad faith." (Id. at 1.) This appears to be based on his contention that he "now realizes this was not a (SETTLEMENT) to his benefit, but Defendants." (Id. at 2.) He further states:

> Whereas, plaintiff attorneys states: "Defendants don't even want to pay court costs! Now plaintiff has not been compensated for his injuries at all. Nor do [sic] he feels [sic] that justice is being served. Especially, when there has not been any (Injunctive Relief) nor any (Stipulations) put in place to prevent such violations to him and others access to the Courts.

(Id.) Ellerbe further claims he has suffered "'mental anguish and suffering' etc." and seeks "in excess of $10,000 dollars" for that. (Id. at 2-3.) He also seeks court costs of $1,205.00 associated with this case and two other cases. (Id. at 3.)

On July 30, Defendants moved to enforce the settlement agreement. (Doc. 79.)

By letter dated August 10, 2015, Ellerbe responded to Defendants' motion to enforce the settlement. (Doc. 81.) Ellerbe contends that his appointed counsel were "adverse to obtaining him

6

justice," and that he was "confused" and "persuaded . . . to simply agree with a 'Bad deal' even though that wasn't his initial stance on this matter." (Id. at 1.) He further complains that his pro bono counsel showed "adversity" because during the settlement they advised him that he "may not win anything" and that, after the hearing when he tried to re-negotiate the settlement, they indicated that they would move to withdraw if he did not abide by the agreement he made and confirmed in open court. (Id. at 2, 4.) He insists that because he has not signed anything, there is no agreement, and seeks an evidentiary hearing in any event. (Id. at 3.)

**II. ANALYSIS**

"When considering a motion to enforce a settlement agreement, the district court applies standard contract principles." Topiwala v. Wessell, 509 F. App'x 184, 186 (4th Cir. 2013) (citing Bradley v. Am. Household, Inc., 378 F.3d 373, 380 (4th Cir. 2004)). Under North Carolina law, an enforceable agreement requires that the parties have a meeting of the minds on its material terms. Elliott v. Daniel, 569 S.E.2d 33 (N.C. Ct. App. 2002) (enforcing settlement announced in court to trial judge).

The court has the authority to enforce a settlement even though it is not yet consummated or reduced to writing. Hensley v. Alcon Labs, Inc., 277 F.3d 535, 540, 542 (4th Cir. 2002). "If there is a factual dispute over the existence of an agreement,

7

over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement *summarily*." Id. at 541 (footnote and citations omitted). Rather, the court must hold an evidentiary hearing to resolve that dispute. Id. However, if it is clear that an agreement exists and its terms and conditions can be determined, the court may enforce it summarily as long as the excuse for nonperformance is "comparatively insubstantial." Id. (quoting Millner v. Norfolk & W. R. Co., 643 F.2d 1005, 1009 (4th Cir. 1981)). The fact that a party has misgivings or "second thoughts" about the wisdom of a valid agreement or its results does not render the agreement unenforceable. See id. at 540; Harmon v. Frangis, 676 S.E.2d 670 (N.C. Ct. App. 2009) (finding claim that a party "changed her mind" insufficient to render agreement invalid); Harris v. Ray Johnson Constr. Co., 534 S.E.2d 653, 655 (N.C. Ct. App. 2000) (enforcing agreement to settle case). It is also not a bar to enforcement that the agreement has not been reduced to a writing. Hensley, 277 F.3d at 541 (citing Alexander v. Industries of the Blind, Inc., 901 F.2d 40, 41 (4th Cir. 1990)).

Here, the court has no trouble concluding that Ellerbe reached a complete agreement with Defendants as to the resolution of his case and that the agreement's terms and conditions are definite. His lawsuit sought declaratory and injunctive relief as to his

8

claimed right to review certain materials in his prison cell, and the terms of his settlement — arrived at after almost four hours of negotiation — are clear and specific, were reduced to writing, and were read into the record verbatim in open court in Ellerbe's presence. (Doc. 75 at 15.) To be sure that Ellerbe agreed to them, however, the court specifically inquired whether he agreed with the terms, including the fact that he and Defendants were agreeing to bear their own costs; Ellerbe said that he did. (Id. at 16–17.) Finally, the court inquired as to whether there were any other terms of his agreement that were not recited in open court; again, Ellerbe confirmed that there were not. (Id. at 17.)

The only change since the settlement conference is that, once Ellerbe returned to his prison cell, he developed second thoughts about his agreement and began to conjure up additional terms.[2] So, now he seeks to reopen the negotiations. He does not dispute the existence of the agreement, its terms as recited to the court, or the authority of counsel to negotiate its terms.

The point of the settlement conference was to determine whether a final settlement could be reached. It is significant that the parties, including Ellerbe, represented to the court that they had settled the case and recited verbatim the terms of the

---

[2] It is noteworthy that Ellerbe's new claims include costs for other lawsuits, which would not even be compensable even assuming his claim in the present suit is meritorious.

9

settlement. Ellerbe's subsequent effort to place blame on his counsel as being "adverse" or somehow pressuring him are wholly unsupported and insufficient to necessitate an evidentiary hearing. There is no claim or evidence that Ellerbe's agreement was arrived at hastily. Rather, it was reached after nearly four hours of negotiations with Defendants, and Ellerbe was present and represented by counsel throughout. When the lawyers reported to the court that an agreement had been reached, the court inquired of Ellerbe in open court as to whether he assented to the settlement, and he represented that he did. The court carefully observed Ellerbe at the time and detected absolutely no indication of coercion; indeed, he was represented by excellent and experienced trial counsel. As the transcript reveals, he readily assented when asked if he agreed to the terms of his agreement. If, as he now claims, his attorneys advised him that he might recover nothing if the case proceeded, such advice would have been fair and accurate. Thus, on this record, Ellerbe's generalized invocation of coercion or "bad faith" is wholly unsupported factually, is contrary to the colloquy in open court, and does not warrant bringing him and the parties back to court yet again.

For these reasons, the court finds that the terms of the settlement recited on the record and set forth herein accurately reflect the parties' agreement. Consequently, Ellerbe's motions to reopen the negotiations will be denied, and his pro bono

counsels' motion for leave to withdraw will be granted, and Defendants' motion to enforce the settlement agreement will be granted. The parties are bound by the terms of the settlement agreement recited in open court. (Doc. 75 at 15-17.)

**III. CONCLUSION**

For the reasons stated,

IT IS ORDERED that Ellerbe's motions to set aside the settlement agreement (Docs. 72, 73, 78, 81) be DENIED, Defendants' motion to enforce the settlement (Doc. 79) be GRANTED, and pro bono counsel's motion for leave to withdraw (Doc. 77) be GRANTED. The parties are bound by the terms of the agreement announced in open court on June 30, 2015. (Doc. 75.)

This action will be DISMISSED WITH PREJUDICE.

/s/   Thomas D. Schroeder
United States District Judge

August 17, 2015